IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-00143-01-CR-W-BP |
| | ) | |
| FAHEEM BOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is defendant Faheem Bowers's Motion to Reopen and Reconsider Detention Order or Temporary Release (Doc. #76). In addition to this pleading, the Court has reviewed the Pretrial Services Report (Doc. #6), the Order of Detention Pending Trial (Doc. #8), the transcript of the detention hearing held before the undersigned (Doc. #23), the District Court's Order Denying Defendant's Request to Revoke Detention Order (Doc. #34), and the Government's Suggestions in Opposition to Defendant's Motion for Reconsideration of Detention Order (Doc. #77).

### I. DISCUSSION

Defendant Bowers brings his motion under 18 U.S.C. § 3142(f) and (i). (Doc. #76 at 1.)

Section 3142(f)(2)(B) states in part:

> The [detention] hearing may be reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Section 3142(i) states in part:

> The judicial officer may, by subsequent order, permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

Defendant Bowers argues that the current pandemic constitutes both a change in circumstances for reconsideration of detention under section 3142(f) and a compelling reason for release under section 3142(i) because his medical issues put him at a higher risk for COVID-19 difficulties.

### A. Request to Reopen Detention Hearing Under Section 3142(f)

While defendant Bowers argues that the COVID-19 pandemic constitutes a changed circumstance that compels his release under 18 U.S.C. § 3142(f), a section 3142(f) analysis "focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community." *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). *Accord United States v. Crandell*, No. 19-cr-255 (JNE/TNL), 2020 WL 1873047, at *1 (D. Minn. Apr. 15, 2020). Thus, to reopen the issue of pretrial detention under section 3142(f), a defendant must demonstrate how the pandemic would reduce his risk of nonappearance or the risk that he poses to the community. *See United States v. Abari*, Crim. No. 19-103 (01) (MJD/ECW), 2020 WL 2992399, at *4 (D. Minn. June 4, 2020). "The risk of harm *to the defendant* does not usually bear on this analysis." *Clark*, 2020 WL 1446895, at *3 (emphasis in original).

Defendant Bowers has offered no reason as to how the pandemic would reduce his risk of nonappearance or the risk he poses to the community. Accordingly, the Court finds that reconsideration of detention is not warranted under section 3142(f).

B.     Request for Temporary Release Under Section 3142(i)

As set forth in *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020), "whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic ought to [be] more properly considered on a case-by-case basis under the 'another compelling reason' prong of § 3142(i)." The *Clark* court set out the following factors to be considered by a court in making the determination of whether a defendant's COVID-19 concerns present a compelling reason for release:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

2020 WL 1446895, at *3.   The Court will examine each of these factors.

1.     The Original Grounds for the Defendant's Pretrial Detention

On April 15, 2019, the undersigned entered an Order detaining defendant Bowers. Defendant Bowers filed a Motion for Reconsideration of Detention Order on August 30, 2019. The District Court entered an Order Denying Defendant's Request to Revoke Detention Order (Doc. #34) on October 11, 2019.  The District Court's Order found that "[t]he Record contains constitute clear and convincing evidence that there is no condition or combination of conditions of pretrial release that will reasonably assure Defendant's presence for trial or the safety of the community." (*Id.* at 3.)  In support of this finding, the Order noted the rebuttable presumption that no combination of conditions will reasonable assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more

is prescribed in the Controlled Substances Act, the defendant's history of felony convictions related to drug trafficking, the defendant's lack of ties to the area, and the defendant's attempt to avoid apprehension by fleeing the state.  (*Id.* at 2.)

With regard to the first factor, defendant Bowers argues that since the detention hearing, he has filed a number of pretrial motions which challenge the validity and the strength of the evidence against him.  (Doc. #76 at 5.)  A hearing on these motions is scheduled for October 7, 2020.  It is speculative, at this point, to state that these motions will affect the weight of the evidence against the defendant.  However, it is clear that these pretrial motions do not change the Court's stated reasons behind the detention decision, that is the defendant's criminal history, his lack of ties to the area, and his attempt to avoid apprehension by fleeing the state.

The Court finds that the original grounds for the defendant's pretrial detention are strong and that this Court's detention decision has been affirmed by the District Court.  This factor weighs in favor of continued detention.

2. The Specificity of the Defendant's Stated COVID-19 Concerns

With regard to the second factor, defendant Bowers states that he has been diagnosed with asthma and high blood pressure which is monitored weekly and that he is also receiving treatment for ulcers.  (Doc. #76 at 5.)  Defendant Bowers contends that he is "possibly at a higher risk for COVID-19 difficulties due to these medical issues."  (*Id.*)  Further, defendant Bowers states that numerous inmates and staff have tested positive for COVID-19 at nearby detention facilities and that on July 28, 2020, inmates at CoreCivic were advised that one employee of the CoreCivic detention center had tested presumptively positive.  (*Id.*)

In response to the defendant's medical issues, the government stated:

4

Case 4:19-cr-00143-BP   Document 79   Filed 09/14/20   Page 4 of 9

> . . . Out of the conditions that the defendant mentions, none of them have been classified by the Center for Disease Control (CDC) as underlying medical conditions that qualify as an "increased risk." Two of the conditions that the defendant suffers from, asthma and hypertension, are listed by the CDC as conditions where a person "might be at an increased risk." However, questions have emerged regarding the connection between asthma and COVID-19 and whether individuals with asthma are more at risk to contract and suffer from the virus. According to recent research reported in *The Journal of Allergy and Clinical Immunology*, patients with asthma were not more likely to be hospitalized due to COVID-19 than those without asthma.
>
> The defendant does not complain of the medical care that he has received at CoreCivic or claim that he is unable to provide self-care or perform daily activities. Many individual[s] across the nation are in the same or similar position as the defendant, and the defendant's medical condition remains the same whether he is released. . . .

(Doc. #77 at 6-7; footnotes omitted.)

In response to the defendant's concerns regarding the threat of exposure at CoreCivic, the government advised:

> The Government has inquired with the United States Marshal Service for the Western District of Missouri (USMS) regarding COVID-19 cases at CoreCivic. The USMS works closely with institutions that it contracts with to detain defendants pending trial. All these detention facilities, including CoreCivic where the defendant is currently detained, are closely monitoring their inmate population and employees and have measures in place to mitigate health risks. According to the USMS, there is no evidence that any inmate or employee at CoreCivic is currently infected with COVID-19. CoreCivic has reported that staff members have been infected with the virus, but have since recovered. Further, CoreCivic has procedures in place to monitor and quickly act if any inmate or employee begins to display symptoms or if any other condition changes.

(Doc. #77 at 3.)

While defendant Bowers's underlying medical conditions *might* put him at an increased risk of severe illness from COVID-19, he is detained at a facility that has implemented measures to minimize the likelihood of the virus entering and/or spreading within the facility. "The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify

5

Case 4:19-cr-00143-BP   Document 79   Filed 09/14/20   Page 5 of 9

his release." *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). *See also United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *5 (D. Kan. Mar. 25, 2020) (argument that an outbreak is inevitable is speculative); *United States v. Lunnie*, No. 4:19-cr-00180 KGB, 2020 WL 1644495, at *3 (E.D. Ark. Apr. 2, 2020) (same). The Court finds that the defendant's stated concerns are too speculative or generalized to favor release.

        3.        The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate Other COVID-19 Risks to the Defendant

With regard to the third factor, defendant Bowers states that his proposed release plan would be to live in Pittsburgh, Pennsylvania, with his fiancé and her two children. (Doc. #76 at 4, 6.) The defendant proposes that his fiancé act as his third-party custodian and that he be placed on GPS monitoring and home detention that would allow only medical and court travel. (*Id.* at 4, 6.) The defendant further states that his fiancé works in a nursing home where she is routinely tested which mitigates the defendant's risk of contracting the virus from her. (*Id.* at 4, 6.)

In *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020), the court evaluated the defendant's proposed release plan to allow his brother to drive him from Leavenworth, Kansas, to Chicago, Illinois, to reside with his 73-year-old mother as follows:

> The Bail Reform Act allows for temporary release only if the court determines that such release is "necessary" for a compelling reason. 18 U.S.C. § 3142(i). In the context of COVID-19, this means that the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. Thus, the court evaluates the extent to which the proposed release plan is tailored to mitigate or exacerbate the defendant's overall COVID-19 risks.
>
> Here, Mr. Clark's proposed release plan addresses only isolated aspects of public health officials' recommendations while ignoring other risk factors that would arise if he were released from custody. Mr. Clark has not set forth a record establishing that, even if someone at the facility were to contract COVID-19, CoreCivic is unprepared to contain the virus or care for those who may become

infected. To the contrary, CoreCivic provides around-the-clock medical care, is staffed and trained to contain or treat the virus, and communicates with government partners and health agencies to keep those in its care safe and healthy. . . . The record is void of any information suggesting that the facility would be unable to render appropriate medical treatment to defendant were he to become ill. . . .

Mr. Clark also does not address the extent to which his risks could be exacerbated if he returns to Chicago. He proposes home detention with GPS monitoring. However, he offers no evidence to explain how living with his mother mitigates the risk of infection. For example, he does not explain who else has or will live in or frequent the home or identify any screening practices or concrete COVID-19 precautions being taken there. He therefore offers nothing more than speculation that home detention would be less risky than living in close quarters with others at CoreCivic, which at least has screening practices and other reasonable COVID-19 precautions in place. He also does not address the risk of exposure while en route from CoreCivic's Leavenworth facility to Chicago, which is an eight-hour drive during which he and his brother would inevitably have to make occasional stops for necessities. And he does not address, once there, the Chicago health care system's capacity to provide him with adequate treatment if he were to contract the virus. In contrast, if he remains at CoreCivic he has access to around-the-clock medical care, the facility is staffed and trained to contain or treat the virus if necessary, and it collaborates with government partners and health agencies to keep its employees and those in its care safe and healthy. . . . CoreCivic has ample motivation to prevent any outbreak at the facility and, even if an outbreak occurs, to contain and manage it for the well being of all involved.

On balance, the court is persuaded that this factor is neutral. It is speculative to predict whether Mr. Clark is safer in terms of his overall COVID-19 risks whether he is in custody or temporarily released to live with his mother in Chicago.

*Id.* at 6-7 (citations omitted).

Defendant Bowers is housed in the same facility as defendant Clark. Defendant Bowers, like defendant Clark, has not set forth a record establishing that, even if someone at the facility were to contract COVID-19, CoreCivic is unprepared to contain the virus or care for those who may become infected. Defendant Bowers, like defendant Clark, does not address the risk of exposure while en route from CoreCivic's Leavenworth facility to his proposed destination (and back and forth from Kansas City, Missouri for court appearances). Pittsburgh, Pennsylvania is

7

approximately 850 miles from Leavenworth, Kansas, and Kansas City, Missouri. Whether the trip is made via public transportation or by private vehicle, it entails a risk of exposure. Defendant Bowers also states that he will leave his home for medical travel. This too entails a risk of exposure. *See United States v. Bracey*, No. 15-cr-235(2) (JNE/TNL), 2020 WL 1809187, at *6 (D. Minn. Apr. 9, 2020) ("Whereas Defendant is currently able to receive medical care in the controlled environment of the jail, he would be required to seek medical care in the community upon release, which could very well put him at greater risk of contracting COVID-19 given the increased contact with members of the public.") With regard to defendant Bowers's proposed living arrangement, the fact that the defendant's fiancé is routinely tested does little to mitigate the defendant's risk if his fiancé does contract the virus, as the defendant must remain in the home with his fiancé as his third-party custodian. In addition, there is potential exposure from the children[1] who reside in the home and those who might visit the home.

As in *Clark*, the Court finds that it is speculative to predict whether defendant Bowers is safer in terms of his overall COVID-19 risks whether he is in custody or temporarily released to live with his fiancé and her children in Pittsburgh.

        4.        The Likelihood That the Defendant's Proposed Release Would Increase COVID-19 Risks to Others

With regard to the fourth factor, defendant Bowers states that he plans to isolate himself away from his fiancé and her children in the home in Pennsylvania for two weeks upon his arrival and then to remain on house arrest to eliminate the risk to others. (Doc. #76 at 6.)

---

[1] The Pretrial Services Report, dated April 12, 2019, provides the ages of the children as 16 and 14. (Doc. #6 at 2.)

In analyzing this factor, courts have consistently looked to the potential risks to law enforcement officers, pretrial services officers, and others[2] should a defendant violate conditions of release. *See United States v. Bracey*, No. 15-cr-235(2) (JNE/TNL), 2020 WL 1809187, at *6 (D. Minn. Apr. 9, 2020); *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020); *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020). The Pretrial Services Report lists eight prior felony convictions for defendant Bowers. (Doc. #6 at 3-4.) As set forth in *Clark*, 2020 WL 1446895, at *7, when "[a defendant] has been unable or unwilling to remain law-abiding for most of his adult life[,] [t]he court has no reason to believe that he would suddenly become compliant now." *Accord Boatwright*, 2020 WL 1639855, at *8; *Smoot*, 2020 WL 1501810, at *3.

The Court concludes that defendant Bowers "has not established compelling reasons sufficient to persuade the court that temporary release is necessary." *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *8 (D. Kan. Mar. 25, 2020).

## II. CONCLUSION

Based on the foregoing, it is

ORDERED that defendant Bowers's Motion to Reopen and Reconsider Detention Order or Temporary Release (Doc. #76) is denied.

*/s/ Lajuana M. Counts*
Lajuana M. Counts
United States Magistrate Judge

---

[2]The Court notes its concern for potential exposure to the patients within the nursing home in which the defendant's fiancé works.